EVANS et ux. v. CONNECTICUT GENERAL LIFE INS. CO. et al.

No. 13161.

Court of Civil Appeals of Texas. Fort Worth.

May 24, 1935.

George M. Hopkins, of Denton, for appellants.

Read, Lowrance & Bates, of Dallas, and Sullivan, Speer & Minor, of Denton, for appellees.

BROWN, Justice.

George M. Evans and wife, Clara K. Evans, appellants here, brought suit in the district court of Denton county, Tex., against the Connecticut General Life Insurance Company and the Dallas Bank & Trust Company, both being corporations, appellees, alleging that the first-named defendant is a foreign corporation doing business in Texas, and maintaining an office and agent in Dallas county, and that the other defendant is a Texas corpora-. tion with its principal office in Dallas county; that plaintiffs own in fee simple a tract of land lying in Denton county, and on

July 11, 1923, they obtained a loan of $3,250 from the Dallas Bank & Trust Company (then named Dallas Trust & Savings Bank), and executed five promissory notes payable to the order of said defendant, four each for $125.00, bearing interest from date at the rate of 6 per cent. per annum, and maturing November 1, 1924, 1925, 1926, and 1927, and one for $2,750, bearing the same interest, all interest being payable annually, said last note maturing November 1, 1933; that to secure the payment of said five notes they executed and delivered to said defendant a first lien deed of trust on said tract of land; that the plaintiffs in said deed of trust obligated themselves to "pay all taxes and assessments and premiums of insurance now due or which may become due on said premises or chargeable against said premises on said bond, or upon the interest in said premises of the said mortgagee, or its successors and assigns before the same shall become delinquent or if at any time, any law, either Federal or state, shall be enacted imposing or authorizing the imposition of any tax upon this mortgage or upon said bond, or upon the principal or interest money secured by this instrument, or by virtue of which the owner for the time being of the land above described shall be authorized to pay any such tax upon said bond or mortgage or the principal or interest of the debt secured, or upon either of them and deduct the amount of such tax so paid from the debt hereby secured, or upon the rendering by any court of competent jurisdiction of a decision that the undertaking by the mortgagor, as herein provided to pay such tax or taxes is illegal or inoperative, or in any such event, the said principal sum hereby secured, and all interest thereon to the date of payment thereof, shall, at the option of the holders of said bond be and become due immediately and payable, anything in this mortgage or bond to the contrary, notwithstanding, provided the condition of agreement shall not be construed to include any personal tax when imposed against the owner of said bond or mortgage at the residence or domicile of such owner.

"But in case of default on the part of the mortgagor to keep or perform any of the covenants or agreements herein contained the mortgagor does hereby fully authorize and empower the said mortgagee, or its successors and assigns, acting for itself, or themselves, or by an attorney or agent, duly appointed in writing, at any time made after default or failure, as aforesaid, to sell said property to the highest bidder for cash in hand at the time, place and in the manner and after giving notice * * * First, to the payment of the proper expenses of advertising and making the sale; Second, to the payment of the said mortgagee or its successors and assigns, their attorney or agent making the sale, five per centum of the whole amounts due and unpaid on said bond and advances, as a commission for making the sale; Third, to the payment of said 'Bond' together with all interest thereon; Fourth, to the payment of the taxes, assessments, insurance premiums, and all other payments made for or on account of the mortgagor on the premises aforesaid with interest; lastly, to hold the remainder of the moneys, if any, subject to the order of the mortgagor, his heirs or assigns."

That on the same day plaintiffs executed and delivered to said defendant eleven promissory notes, one "for $14.90 due Nov. 1, 1923; Note No. 2 for $48.75 due Nov. 1, 1924; Note No. 3 for $46.88 due Nov. 1, 1925; Note No. 4 for $45 due Nov. 1, 1926; Note No. 5 for $43.12 due Nov. 1, 1927; Note No. 6 for $41.25 due Nov. 1, 1928; Note No. 7 for $41.25 due Nov. 1, 1929; Note No. 8 due Nov. 1, 1930 for $41.25; Note No. 9 for $41.25 due Nov. 1, 1931; Note No. 10 for $41.25 due Nov. 1, 1932; Note No. 11 for $41.25 due Nov. 1, 1933; said notes aggregating the total sum of Four Hundred Forty-six and 15/100 ($446.15) Dollars, each of said notes bearing interest after maturity at the rate of ten per centum per annum."

That to secure said last-described interest notes plaintiffs executed and delivered to said defendant a second deed of trust on the same tract of land having the following provisions: "It is, therefore, agreed that if the 'bonds' secured by the said first mortgage be paid off and discharged according to the terms thereof, and the above described notes hereby secured are paid off according to their face, tenor and effect, then this conveyance shall be void and the lien hereby created shall be released at the cost of the mortgagor; but if default should be made in the payment of any of the notes above described, or of the 'bond' or any of them secured by the first mortgage aforesaid, or if default should be made in the compliance with any of the terms or conditions of said first mortgage, which are hereby adopted and

made a part of this instrument, or if any option of prepayment provided for in said first mortgage is exercised, then the whole sum of money hereby secured shall become due and payable, at the election of the holder thereof, without notice of said election to the mortgagor; and the mortgagor hereby fully authorize and empower the said mortgagee, or other legal holder of said notes, or their attorney or agent appointed in writing, and acting at their request, at any time after default or failure as aforesaid, to sell said land on the first Tuesday in some month, between the hours of ten o'clock a. m. and four o'clock p. m. to the highest bidder for cash, at the court house door of Denton County, after giving notice, by posting written notices, now required by law in making sales under deeds of trust. * * * And shall receive the proceeds of said sale, to be applied as follows: First, to the cost and expenses of making said sale, including a reasonable compensation to said mortgagee, or other legal holder of said notes, their attorney or agent, for services; Second, to the payment and satisfaction of said notes, and any other indebtedness hereby secured; Third, to the payment and satisfaction of the 'bond' secured by the above mentioned first mortgage, or of any taxes, insurance or other sums due under the terms of said first mortgage, according to the conditions thereof; Fourth, the balance, if any, to be paid to the mortgagor, or to the heirs, assigns or legal representatives of the mortgagor."

Plaintiffs alleged that by reason of the accelerating maturity clauses, the defendants could declare all of the interest notes provided for in the second deed of trust due and payable, on default, and that the contract is tainted with usury, and the second deed of trust constitutes a cloud upon the title to their lands.

The alleged payments of $74.48 on November 1, 1923; $368.25, 1924; $359.88, 1925; $350, 1925; $340.62, 1926; and payments of $206.25, November 1, 1928, 1929, 1930, 1931, and 1932; that $2,318.75 was paid more than two years before the suit was brought, but that $206.25 was paid to defendants within less than two years from the filing of plaintiffs' suit. They sued for double the amount of the last payment, and prayed that the first nine payments be credited to the principal sum, together with double the amount of the tenth payment, and, in the alternative, that the tenth payment be likewise credited, thus leaving a balance of about $675.03 due on the loan.

They pleaded minutely the amounts on principal and on interest paid as to each payment made by them. They, by pleading, tendered the balance they claimed was actually due, prayed for a restraining order to issue against the defendants enjoining them from selling the lands to satisfy the debt the defendants were claiming existed against the lands, and prayed further for the cancellation of the lien thereon caused by the usurious contract.

Both defendants filed pleas of privilege to be sued in the district court of Dallas county, and plaintiffs filed a controverting plea to same. The issue was drawn, and the question of venue tried to the court, and, after a hearing, the court sustained the pleas of privilege of the defendants and ordered the cause transferred to the district court of Dallas county. Plaintiffs have appealed.

██ Under the authority of Great Southern Life Ins. Co. v. Williams et al. (Tex. Civ. App.) 77 S.W.(2d) 900, with which we agree, this was a suit to remove a cloud from the title to land situated in Denton county, and the district court of such county was the proper court in which to file this suit.

The allegations of plaintiffs' petition are sufficient to raise the issue of an usurious contract, when tested by the rule laid down by the Commission of Appeals, in Commerce Trust Co. v. Best, 80 S.W.(2d) 942. These allegations set out the provisions of the contracts which constitute the alleged usurious agreement. The plaintiffs are entitled to have the issues raised by their pleadings tried in the district court of Denton county.

We do not feel the necessity of passing upon the perplexing question of whether or not the contract is in fact usurious, in order to settle the question of venue, and we do not at this time decide such issue, but it appears that a contract quite similar to the contract complained of here was held usurious in Dallas Trust & Savings Bank v. Brashear (Tex. Com. App.) 65 S. W.(2d) 288.

The judgment of the trial court sustaining appellees' pleas of privilege and ordering the cause transferred to the district court of Dallas county is reversed, and judgment is here rendered overruling appellees' pleas of privilege.